IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT PHIFER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:19cv166-MHT |
| | ) | (WO) |
| HYUNDAI POWER TRANSFORMERS | ) | |
| USA and LUTHER SCULL, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

Plaintiff Robert Phifer, Jr., who is black, has sued
defendants Hyundai Power Transformers USA and Hyundai
employee Luther Scull under three federal statues: (1)
Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. §§ 1981a and 2000e through 2000e-17; (2)
§ 1981, originally part of the Civil Rights Act of 1866,
as amended, 42 U.S.C. § 1981; and (3) the Family and
Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-54.
Relying on Title VII and § 1981, Phifer claims that
Hyundai intentionally created a hostile-work environment
for him; discriminated against him because of his race,

by failing to promote him, giving him adverse job assignments and disciplinary citations, and firing him; and retaliated against him by suspending and then firing him when he complained of race discrimination.  Relying on the FMLA, he also claims that both Hyundai and Scull interfered with the exercise of his rights under thatstatuteand retaliated against him for exercising those rights.  The court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights); 42 U.S.C. § 2000e-5 (Title VII); and 29 U.S.C. § 2617(a)(2) (FMLA).

This case is now before the court on Hyundai and Scull's motions to dismiss.  Relying on Federal Rule of Civil Procedure 12(b)(6), Hyundai moves to dismiss, for failure to state a claim, Phifer's Title VII and § 1981 claims of racially hostile-work environment, discriminatory failure to promote, and retaliation as well as his FMLA interference claim.  The company also moves to dismiss his Title VII failure-to-promote and hostile-work-environment claims for failure to exhaust

administrative remedies.   Finally, relying on Rule 12(b)(6), Scull moves to dismiss Phifer's two FMLA claims on the basis that, under the facts alleged, thestatutedoes not apply to him and thus Phifer has failed to state an FMLA claim for relief against him.

For the reasons discussed below, Hyundai's motion will be granted in part and denied in part, and Scull's motion will be granted in full.

## I.   STANDARD ON MOTION TO DISMISS

In a defendant's Rule 12(b)(6) failure-to-state-claim motion to dismiss, the court accepts the plaintiff's allegations as true, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *see Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).   The court may draw "reasonable inferences" from the facts alleged in the complaint.   *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).

To survive a motion to dismiss for failure to state

a claim under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Hyundai's argument that some of Phifer's Title VII claims should be dismissed for failure to exhaust administrative remedies, however, does not fall under Rule 12(b)(6): "[M]otions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b)." *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008). Failure to exhaust instead is considered "a matter of judicial administration." *Id.* Although this issue is appropriately decided at the same time as a Rule 12(b) motion, the court's consideration of the arguments regarding exhaustion is not subject to the same

**4**

limitations about what factual material may be considered as apply to Rule 12(b)(6) motions. *See id.* at 1375-76. In other words, the court is not restricted to the four corners of the complaint.

## II.  FACTUAL BACKGROUND

According to the factual allegations in the complaint, Phifer was hired by Hyundai in 2011 to work in the company's winding department. *See* Second Amended Complaint (doc. 43) at ¶ 13.  As he describes it, the environment at the company was suffused with discrimination against black employees.  Black workers were called "boy" by white employees and supervisors. *Id.* at ¶ 28.  White workers were allowed to take Saturdays off freely, while black workers were disciplined for asking. *See id.* at ¶¶ 34-36.  Disciplinary points were removed from white workers' personnel files, while black workers were fired for accumulating such points. *See id.* at ¶ 40.  Black workers were denied promotions and favorable shift assignments, no matter their

qualifications. *See id.* at 42-44. One supervisor in particular was openly hostile to black workers. *See id.* at ¶ 30. According to the complaint, there was even a break room that black workers were barred from using, while white and Korean workers napped there during their shifts. *See id.* at ¶ 46.

Phifer began complaining about this discrimination in March 2018, first to Hyundai's chief operating officer and later to the company president. *See id.* at ¶¶ 47-48. Two months after he started complaining, he was suspended for accessing a breaker panel box, which he says was a routine act among his co-workers that never resulted in discipline, although it was a violation of the company's safety rules. *See id.* at ¶¶ 60, 64-69. Indeed, Phifer says that Scull, the white supervisor named as a defendant in this suit, had accessed the same panel without repercussions twice on the same day Phifer accessed it. *See id.* at ¶ 65. After five days of suspension, Phifer was fired. *See id.* at ¶ 70.

Separately, Phifer had a son born in January 2018

with serious medical needs. *See id.* at ¶ 18. Phifer applied and was ultimately approved for leave under the FMLA to care for his son. *See id.* at ¶ 18-20. But he says that Scull, acting at the behest of a senior supervisor named Clayton Payne, attempted to discipline him for taking intermittent FMLA leave. *See id.* at ¶¶ 22-25. Phifer refused to sign the disciplinary citations that Scull wrote, and, while it is not clear from the allegations in the complaint whether he ever was in fact disciplined by Hyundai for taking FMLA leave, that inference can be drawn. *See id.* at ¶¶ 22-25, 182, and 194. The allegations in the complaint also suggest that he was eventually suspended and terminated for exercising his FMLA rights. *See id.* at ¶¶ 185, 198, & 201.

## III.   DISCUSSION

### A.   Exhaustion of Title VII claims

Hyundai argues that Phifer's Title VII hostile-work-environment and failure-to-promote claims

**7**

should be dismissed for failure to exhaust his
administrative remedies at the Equal Employment
Opportunity Commission (EEOC). As stated above, in
resolving this issue before trial, the court is not
restricted to the four corners of the complaint.

Plaintiffs who seek to bring suit under Title VII
must first present their claims, in the form of an
administrative charge, to the EEOC so that the commission
may "have the first opportunity to investigate the
alleged discriminatory practices to permit it to perform
its role in obtaining voluntary compliance and promoting
conciliation efforts." *Gregory v. Ga. Dep't of Hum.
Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans
v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.
1983)). This requirement does not, however, mandate that
the claim in plaintiffs' complaints must be identical to
their EEOC charge. Instead, to determine whether a
claim's allegations are sufficiently related to the
plaintiffs' charge, the central question is whether the
claim "was like or related to, or grew out of, the

**8**

allegations contained in [the] EEOC charge." *Id.* at 1280.  The allegations of the claim must fall within "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge," but this scope "should not be strictly interpreted." *Id.*

There is little question that Phifer's claim of a hostile-work environment is sufficiently connected to his EEOC charge to meet this standard.  In his charge to the EEOC, Phifer complained of inequitable discipline; white workers being allowed to take days off that black workers were not; unprofessional conduct toward him by a superior after Phifer complained; co-workers hiding his equipment; Scull suggesting that all black workers look alike; and public discipline of workers who took part in discrimination complaints.  *See* EEOC Charge Narrative (doc. 43-1) at 4-7.  Whether or not these allegations by themselves indicate that "discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993), an investigation by the EEOC into the

**9**

allegations "would have reasonably uncovered" any further evidence that the environment at Hyundai was hostile or abusive, *Gregory*, 355 F.3d at 1280.  As such, Phifer's Title VII hostile-work-environment claim was exhausted in his EEOC charge and will not be dismissed on that basis.

Whether Phifer exhausted his claim that Hyundai discriminated against him by failing to promote him presents a much closer question.  The nearest Phifer's EEOC charge comes to alleging a failure to promote him is his allegation that, after Scull accessed the same breaker panel as Phifer had, he was promptly promoted instead of being fired.  As will be discussed below, however, the court will dismiss Phifer's failure-to-promote allegations for failure to state a claim, so it need not resolve whether this claim is also barred as unexhausted.


B.  Title VII and § 1981 claims

Hyundai has moved to dismiss for failure to state a

10

claim Phifer's Title VII and § 1981 claims of a hostile-work environment, retaliation, and failure to promote. In general and for purposes here, the same legal framework governs claims under Title VII and § 1981, so the court's analysis of these claims will apply to the counts Phifer brings under both statutes. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018).

A plaintiff may establish a claim of a hostile-work environment by showing "that: (1) he belongs to a protected group; (2) he suffered unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee ...; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for that environment under a theory of either direct liability or vicarious liability." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153 (11th Cir. 2020). Hyundai challenges the adequacy of

Phifer's allegations on the ground that, even accepted as true, they do not show that "the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees," as is required to meet the fourth element of this test.  *Harris*, 510 U.S. at 22.

Hyundai is wrong.  Phifer alleges a laundry list of abuse and hostility heaped upon black workers at Hyundai. If his allegations are believed, as they must be at this stage, black workers received worse job assignments than white workers, including being required to work on Saturdays when white workers were allowed to take the day off.  *See* Second Amended Complaint (doc. 43) at ¶ 98. Black workers were referred to as "boy" by white co-workers and supervisors.  *Id.* at ¶ 28.  During the 2016 national elections, a white worker told a group of black co-workers, including Phifer, that he "hope[d] you black mother f-ers don't get off work early enough to go vote."  *Id.* at ¶ 29.  Black workers were barred from a break room that white and Korean workers were allowed to use.  *See id.* at ¶ 100.  One supervisor was openly hostile

to black workers. *See id.* at ¶ 99. Another
supervisor--defendant Scull--threatened black workers,
including telling one black worker that he would cut the
brake lines on the worker's car. *See id.* at ¶ 101. A
third "insinuated that Plaintiff and other
African-Americans were poor performers." *Id.* at ¶ 102.
White workers and supervisors "made negative comments
about Plaintiff and other African-American's natural hair
styles." *Id.* at ¶ 104.

These alleged incidents and practices of
discrimination are not, as Hyundai contends, "nothing
more than conclusory allegations that are not entitled
to the presumption of truth." Hyundai's Motion to
Dismiss (doc. 48) at 15. Quite the contrary: Taken as
true, these factual allegations describe a workplace of
rampant, open discrimination against black workers,
including derogatory language and threats of violence
from colleagues and superiors. Whether Phifer's
allegations are borne out by evidence will be the subject
of discovery and further proceedings. But at this stage,

his hostile-work-environment claim plainly survives Hyundai's motion to dismiss.

So too does his retaliation claim, which Hyundai moves to dismiss on the ground that Phifer's complaint fails to allege that those who decided to terminate him were aware of his internal complaints of race discrimination. A charitable interpretation of this argument is that Hyundai has simply misread Phifer's complaint in this case. According to Phifer's allegations, he complained to both the company's president and chief operating officer in March and April 2018. *See* Second Amended Complaint (doc. 43) at ¶¶ 47-48. News of his complaint evidently got around; Hyundai's Team Relations Department was aware of it, as were the Human Resources director, the plant manager, and Phifer's senior supervisor, who became especially hostile to Phifer after learning of the complaint. *See id.* at ¶¶ 49-51. In May 2018, the chief operating officer to whom Phifer had complained was deposed in a separate discrimination case and testified about Phifer's

**14**

complaint.  *See id.* at ¶ 59.  Phifer was suspended and
then fired only days later.  *See id.* at ¶ 60.

A "reasonable inference" from these factual
allegations is that knowledge of Phifer's internal
complaints was widespread at the company, particularly
within the chain of management above him.  *Iqbal*, 556
U.S. at 678.  Indeed, based on Phifer's allegations, it
would be quite *unreasonable* for the court to infer, as
Hyundai asks it to do, that the president of Hyundai, its
COO, anyone familiar with the COO's testimony, its Team
Relations Department, its Human Resources director,
Phifer's senior supervisor, and the plant manager all
were aware of Phifer's complaints, but that none of those
people were involved in the decision to fire him and the
news somehow skipped over everyone who was.  Accordingly,
Hyundai's motion to dismiss Phifer's retaliation claim
will be denied.

Finally, Hyundai moves to dismiss Phifer's claim that
Hyundai discriminated against him by failing to promote
him.  Phifer denominates this claim as a distinct count

in his complaint.  Failure to promote is a recognized theory of liability under Title VII.  There are a variety of ways in which Phifer may establish that Hyundai discriminated against him in the terms or conditions of his employment, as is required to make out a claim of intentional discrimination under Title VII.  *See* 42 U.S.C. § 2000e-2(a)(1).  One of these approaches is to show that he was qualified for a particular position, applied for it, was rejected, and that the position was filled by someone of another race.  *See Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1347 n.2 (11th Cir. 2007).

Hyundai is correct that Phifer's allegations do not make out these elements.  In particular, he does not point to a particular position for which he applied and was rejected.  Instead, he purports to base his failure-to-promote theory on his assignment to night and weekend shifts rather than preferable weekday shifts. *See* Pl.'s Response to Hyundai's Motion to Dismiss (doc. 56) at 19-20.

16

Discriminatory work assignments such as these may, in certain circumstances, constitute the imposition on a worker's terms or conditions of employment necessary for other forms of intentional discrimination claims under Title VII, or the less severe adverse action necessary for a Title VII retaliation claim. *See Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 70-71 (2006). But all favorable shift assignments cannot themselves be promotions, lest every claim of a discriminatory shift assignment be squeezed into Title VII--regardless of its effect on the terms or conditions of a worker's employment--by the simple expedient of reframing it as a failure to promote.

If Phifer was assigned to less favorable shifts than white workers, that fact may well support his claim that Hyundai intentionally discriminated against him in violation of Title VII. But his shift assignment does not in itself constitute a claim of discrimination under the alternative theory that the company failed to promote him based on his race. As such, to the extent that Phifer

17

makes this failure-to-promote theory the basis of a particular claim in his complaint, that claim will be dismissed.

### C.   FMLA Interference

Relying on Rule 12(b)(6), Hyundai also moves to dismiss Phifer's claim of interference with his FMLA rights. Hyundai argues that Phifer's interference claim cannot proceed because he fails to allege that he was prevented from taking his FMLA leave, which the company says is required to state an interference claim under the statute.

As the Eleventh Circuit Court of Appeals has explained, "the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Strickland v. Water Works & Sewer*

*Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001) (citations omitted); *see also* 29 U.S.C. § 2615. Notwithstanding the Eleventh Circuit's recognition that an interference claim lies when an employer "otherwise interfered with" a worker's FMLA rights--rather than being limited to circumstances when the employer "denied" such rights--*Strickland*, 239 F.3d at 1206, Hyundai argues that denial of FMLA rights is a prerequisite of all interference claims. As support for this argument, Hyundai cites decisions of the Eleventh Circuit stating that denial is an element of an interference claim. *See, e.g.*, *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015) ("An interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit."); *Martin v. Brevard Cty. Pub. Schs.*, 543 F.3d 1261, 1266-67 (11th Cir. 2008) ("To prove FMLA interference, an employee must demonstrate that he was denied a benefit to which he was entitled under the FMLA.").

After careful review of the cases in which the Eleventh Circuit used such language, however, the court is convinced that this formulation of the statute does not control here. In the factual context of those cases, it is clear that the Eleventh Circuit was addressing what is necessary to state a claim for interference on the basis of the denial of FMLA rights, rather than what is necessary for claims based on other forms of interference. It was undisputed in those cases that a right had been denied; the issue was instead either the plaintiff's entitlement to the right or whether an alternative defense applied. In none of these cases did the appellate court directly address the elements of an interference claim based on an employer "otherwise interfer[ing]" with FMLA rights. *Strickland*, 239 F.3d at 1206.

Moreover, Hyundai's narrow articulation of FMLA interference claims would be out of step with both the text of the statute and the regulations enforcing it. The FMLA indicates that it "shall be unlawful for any

employer to interfere with, restrain, or deny the
exercise of or the attempt to exercise" a worker's rights
under the FMLA. 29 U.S.C. § 2615(a)(1). Declaring that
interference claims lie only when a worker's FMLA rights
have been denied would read out of the statute the
availability of such claims when the employer has merely
"interfere[d] with" or "restrain[ed]" such rights, as
well as claims arising when the employer has interfered
with a worker's "attempt to exercise" an FMLA right. The
Supreme Court has "cautioned against reading a text in a
way that makes part of it redundant." *Nat'l Ass'n of
Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 669
(2007). This court is disinclined to believe that the
Eleventh Circuit has been as heedless of that admonition
in its interpretation of the FMLA as Hyundai would
suggest.[1]

---

[1]. Such a holding would allow an employer, for
example, to dissuade employees from taking FMLA leave by
warning them that those who took such leave generally did
not receive promotions. Under Hyundai's reading of the
statute, an employee who took the hint, decided not to
take FMLA leave, and instead spent money on hiring a
person to care for a family member would have no cause

Department of Labor regulations interpreting this provision of the statute also explain that "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).  This regulation makes good sense in light of the statute's text, particularly the inclusion among the predicates for an interference claim listed in the FMLA of circumstances when the employer "interfere[s] with" a worker's rights rather than "deny[ing] the exercise of" those rights.  29 U.S.C. § 2615(a)(1).  And the Eleventh Circuit has relied on this regulation to illuminate the scope of the FMLA's

_____

of action because they were not "denied" leave, even though the company did "interfere with" (and possibly "restrain") the employee's exercise of FMLA rights.  29 U.S.C. § 2615.  Moreover, the FMLA's enforcement provision specifically provides damages "in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, [for] any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care."  29 U.S.C. § 2617(a)(1)(A)(i)(II).  This suggests that the drafters of the statute specifically sought to provide a remedy for such violations.

protections.  *See, e.g.*, *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 n.3 (11th Cir. 2014); *Strickland*, 239 F.3d at 1206.  Other circuit courts too have held, in accordance with the text of the FMLA, that an interference claim does not require the outright denial of an employee's FMLA rights.  *See, e.g.*, *Shultz v. Congregation Shearith Isr.*, 867 F.3d 298, 307 (2d Cir. 2017) (any adverse employment action "sufficient to deter or interfere with the employee's exercise of FMLA rights" may give rise to interference claim); *see also Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015); *Olson v. United States ex rel. Dep't of Energy*, 980 F.3d 1334, 1338 (9th Cir. 2020); *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1376 (D.C. Cir. 2020).[2]

---

2.  The circuits appear to have split on this issue, with several adopting the atextual view that Hyundai advances.  *See, e.g.*, *Ross v. Gilhuly*, 755 F.3d 185, 192 (3d Cir. 2014); *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017); *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012); *Quinn v. St. Louis County*, 653 F.3d 745, 753-54 (8th Cir. 2011); *Cf. Groening v. Glen Lake Cmty. Schs.*, 884 F.3d 626, 632 (6th Cir. 2018) (interference claim lies whenever an employer "used [FMLA] leave against" an employee "in an unlawful manner" because, in so doing, the employer "effectively 'denie[s]

Hyundai is correct that Phifer does not claim to have been denied his rights under the FMLA: He says instead that his supervisors at Hyundai attempted to discipline him and threatened to fire him for taking the FMLA leave for which he had been approved.  *See* Second Amended Complaint (doc. 43) at ¶ 182.  But threats of discipline and dismissal may well suffice to "discourage an employee from using" FMLA leave, and thereby interfere with the exercise of the employee's rights.  29 C.F.R. § 825.220(b).  Whether the alleged attempts and threats here are now redressable with appropriate relief remains to be seen.

Moreover, as stated previously, while it is not clear from the allegations in the complaint whether Phifer ever was in fact disciplined by Hyundai for taking FMLA leave, that inference may be drawn; and the allegations in the complaint also suggest that he was eventually suspended and terminated for exercising his FMLA rights.  While

the employee a benefit to which [she] is entitled'") (alterations in original).

these allegations might also support the retaliation claim, there is nothing in the FMLA to prevent the same allegations from supporting both interference and retaliation claims, especially where the act of interference was a part of a chain that led to or ended in an act of retaliation--for example, where the alleged attempt to interfere by disciplining, before the exercise of an FMLA right, ended in the allegedly retaliatory discipline, after the exercise of that right.

Accordingly, Hyundai's motion to dismiss Phifer's FMLA interference claim will be denied.


D.   Scull's Motion to Dismiss

Phifer's supervisor Scull, whom Phifer names as an individual defendant in the FMLA claims of his complaint, seeks to dismiss the claims against him, primarily on the ground that he is not an "employer" subject to liability under the FMLA.   The court agrees that Scull was not Phifer's "employer" and will dismiss these claims.

Under the FMLA, only a worker's employer is liable

for interfering with FMLA rights or retaliating against those who seek to use those rights or complain of such interference. While the Eleventh Circuit has not discussed extensively the meaning of "employer" under the statute, it has recognized the similarity between the definition of "employer" in the FMLA and the same word's meaning in the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(d), holding that "decisions interpreting the FLSA offer the best guidance for construing the term 'employer' as it is used in the FMLA." *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999).

For the purposes of the FLSA, people may qualify as employers if they "have some direct responsibility for the supervision of the employee" who has sued. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986)). The reason why direct responsibility is important is that it tends to show "the supervisor's role in causing the FLSA violation," which is the primary focus of the inquiry. *Lamonica v. Safe*

*Hurricane Shutters, Inc.*, 711 F.3d 1299, 1314 (11th Cir. 2013).  As such, whether a person qualifies as an employer "does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.'" *Alvarez Perez*, 515 F.3d at 1160 (quoting *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir. 1973)).[3]

Scull was one of Phifer's supervisors, though not the supervisor to whom he reported directly.  *See* Second Amended Complaint (doc. 43) at ¶¶ 15, 24.  According to the allegations in Phifer's complaint, Scull was instructed by Clayton Payne, a senior supervisor above him, to discipline Phifer for taking FMLA leave.  *See id.* at ¶ 25.  He attempted to do so twice.  *See id.* at ¶¶ 22-23.  In sum, the complaint alleges that Scull is responsible because he "did not question Payne's motives

---

3.  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

or instructions" when Payne told him to discipline
Phifer.  *Id.* at ¶ 25.[4]

Accepted as true, these allegations do not indicate
that Scull played a sufficiently significant role in
causing the FMLA violations that Phifer says occurred.
To the extent that Phifer's claim of retaliation is based
on his termination, his allegations do not indicate that
Scull had the power to fire him or was involved in the
decision to do so.  To the extent that his claim is based
on disciplinary actions that stopped short of
termination, his allegations indicate only that Scull did
so at the direction of his superior; according to
Phifer's complaint, it was Scull's superior's, not
Scull's decision to initiate the actions.  Phifer's
complaint itself notably restricts Scull's
responsibility to 'just following orders' in the chain

_____

4.  Phifer also sued Payne in earlier iterations of
his complaint, but his claims against Payne were
dismissed without prejudice after he failed to respond
to Payne's motion to dismiss.  *See* Opinion and Order
(doc. 35) at 2-3; Judgment (doc. 40) at 1.  Phifer
declined to renew his claims against Payne in his second
amended complaint.

of command.  On the whole, these allegations do not suggest that Scull's supervisory role made him sufficiently responsible for causing any FMLA violations that may have taken place.  As such, Scull's motion to dismiss will be granted, and he will be dismissed from this suit.

* * *

In conclusion, Hyundai's motion to dismiss will be granted to the extent that Phifer's failure-to-promote claim under Title VII and § 1981 will be dismissed.  In all other respects, the motion will be denied.  And Scull's motion to dismiss will be granted in full.  This suit will proceed against Hyundai on Phifer's remaining Title VII and § 1981 claims of racial discrimination, hostile-work environment, and retaliation as well as his claims of FMLA interference and retaliation.

DONE, this the 2nd day of March, 2021.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

29